IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| James D. Odom, ) | C/A No.: 3:14-456-MGL-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| CVS Caremark Corporation; CVS Rx ) | |
| Services, Inc.; and South Carolina CVS ) | |
| Pharmacy, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

In this employment discrimination case, James Odom ("Plaintiff") sues his former employer CVS Rx Services, Inc., and its related entities CVS Caremark Corporation and South Carolina CVS Pharmacy, LLC ("Defendants") based on his termination from employment. Plaintiff filed this action on January 22, 2014, in the Richland County Court of Common Pleas. [ECF No. 1-1]. The action was timely removed on February 21, 2014. [ECF No. 1]. On August 1, 2014, Plaintiff amended his complaint to add claims of sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"). On September 11, 2014, all pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.).

This matter comes before the court on Defendants' motion to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No. 27]. Plaintiff filed a response to the motion [ECF No. 30], and Defendants filed a reply [ECF No. 33]. The

motion having been fully briefed, it is ripe for disposition. Because the motion is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendants' motion to dismiss, with leave for Plaintiff to file an amended complaint as to hiss Title VII and ADEA discrimination claims.

I.     Factual Background

Plaintiff began working for CVS in 1980. [ECF No. 23 at ¶ 10]. Most recently, he worked at the Assembly Street location in Columbia, South Carolina ("the Pharmacy"), where he was the Pharmacist-in-Charge. *Id*. at ¶ 10. The Pharmacy is owned and operated by South Carolina CVS Pharmacy, L.L.C., but Plaintiff was an employee of CVS Rx Services, Inc., which is the entity that employs pharmacists and pays their salaries. *Id*. at ¶ 11.

In May 2013, Bobby Jack Spivey, Jr. ("Spivey"), an investigator with the South Carolina Department of Health and Environmental Control ("SCDHEC") visited the Pharmacy to investigate a pharmacy patient ("Patient") accused of having unlawfully submitted a fraudulent prescription for a controlled substance unlawfully. *Id*. at ¶ 12. Spivey advised Plaintiff that in January 2013, Patient presented a forged prescription and obtained a supply of Hydrocodone,[1] a controlled substance under both federal and state law. *Id*. at ¶ 13. Plaintiff was not working on the January 2013 date when the prescription was filled. *Id*. at ¶ 14.

---

[1] According to Plaintiff's brief, Plaintiff has since clarified the prescription to be for Lortab 10-500.

2

The standard procedure for the sale of a controlled substance is for the recipient to sign for the medication when obtained. *Id*. at ¶ 15. Because the electronic signature for Patient's prescription was illegible, Spivey searched the paper tracking books/logs that document daily sales of controlled substances. *Id*. at ¶ 16. Spivey asked Plaintiff to assist in his review of the paper books/logs. *Id*. at ¶ 17. Plaintiff and Spivey had difficulty finding the Patient's log so Spivey asked Plaintiff to continue to look over the weekend. *Id*. at ¶¶ 17, 19. During his search, Plaintiff requested a younger, female co-worker contact a Columbia police officer she knew to obtain Patient's driver's license number of the accused individual. *Id*. at 18. Plaintiff believed this information would help him review the paper tracking books/logs because it would give him another identifier to rely on, but ultimately this information did not assist in his search. *Id*. After searching for several hours, Plaintiff was able to locate the entry and contacted Spivey. *Id*. at ¶ 19. Spivey visited the Pharmacy the following Monday to retrieve the information. *Id*.

Approximately three months later, during the week of August 26, 2013, CVS Loss Prevention Manager Shannon Hammond ("Hammond") visited the Pharmacy to speak with Plaintiff about the investigation. *Id*. at ¶ 20. This was the first time Plaintiff had been approached about the investigation since May 2013. He stated that he had assisted in finding the entry and turned it over to Spivey. *Id*. Hammond asked if Plaintiff had obtained the information properly and Plaintiff assured Hammond that he had. *Id*. at ¶ 21. Hammond then left the room and returned only minutes later, accompanied by Spivey. *Id*. at ¶ 22. Spivey then accused Plaintiff of having falsified documents. *Id*.

3

Spivey subsequently asked Plaintiff if he would be willing to submit to a lie detector test, and Plaintiff was adamantly willing to take the same. *Id*. at ¶ 24. Hammond agreed that a lie detector test was an appropriate measure. *Id*. Spivey, Hammond, and Plaintiff scheduled the test for September 10, 2013. *Id*. On September 4, 2013, the Plaintiff arrived at work and was met by his supervisors, Thomas Phillips and Ann Pruter, who informed him that Hammond had concluded that he had committed a violation of Health Insurance Portability and Accountability Act ("HIPAA"). *Id*. at ¶ 25. There had been no previous mention of a HIPAA violation by Spivey or Hammond. *Id*. at ¶ 26.That same day, Plaintiff was terminated from his position. *Id*. at ¶¶ 25, 29.

II.     Discussion

   A.     Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).  Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).  Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by

4

reference, and matters of which a court may take judicial notice." *Tellabs. Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

  B. Analysis

    1. Gender and Age Discrimination Claims

To state a prima facie case of gender/age discrimination, Plaintiff must prove: (1) he is a member of a protected class/over the age of 40; (2) he was performing satisfactorily; (3) he suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Defendants argue that Plaintiff can not show gender or age discrimination because he has not identified a proper comparator.

Plaintiff's amended complaint alleges that "a much younger, female pharmacist who was working at the time of the incident received no level of disciplinary action." [ECF No. 23 at ¶ 33]. Defendants argue that the pharmacist who filled the prescription discovered to be fraudulent is not a comparator because she did not engage in the same behavior for which Plaintiff was terminated and is therefore not similarly situated. The undersigned agrees. Plaintiff's gender and age discrimination claims should be dismissed to the extent Plaintiff relies on a pharmacist who filled the fraudulent prescription as the comparator.

However, Plaintiff also argues that the younger, female coworker who utilized her relationship with a police officer to obtain the accused patient's driver's license number is also a comparator. [ECF No. 30 at 8]. In their reply, Defendants argue that this coworker is not similarly-situated to Plaintiff because she held a lower position. [ECF

No. 33 at 3]. The undersigned makes no judgment at this time on whether the younger, female coworker who obtained the driver's license number is similarly-situated to Plaintiff. The undersigned finds that such an allegation, if stated in the operable complaint, is sufficient to withstand a motion to dismiss under these circumstances. Plaintiff's amended complaint makes no reference to this coworker as a comparator. Therefore, the undersigned recommends the district judge dismiss Plaintiff's gender and age discrimination claims without prejudice, with leave to file a second amended complaint within 15 days of the district judge's order to clarify the proper comparator.

2.     Wrongful termination in violation of public policy

In his third and fourth causes of action, Plaintiff claims that he was terminated in violation of public policy because: (1) he was terminated for cooperating with DHEC and (2) the alleged HIPAA violations that were the basis for his termination were false. Although South Carolina recognizes the presumption of at-will employment, the public policy exception to the at-will doctrine provides an employee with a cause of action if his termination violates public policy. *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 216 (S.C. 1985). The South Carolina Supreme Court has held that the public policy exception is applicable to "situations where the employer asks the employee to violate the law or the reason for the termination itself is a violation of criminal law," but also applies whenever "there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy." *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637, 638 (S.C. 2011). The determination of what constitutes public policy is a question of law for the courts to decide. *Id*. at 638.

6

Plaintiff admits that Defendants did not ask him to violate the law and that his termination was not a violation of criminal law. [ECF No. 30 at 13]. Instead Plaintiff claims "CVS took no steps to ensure that the Plaintiff actually violated any laws or regulations and thereby terminated him for cooperating with DHEC." [ECF No. 23 at ¶ 48]. Even if the stated reason for Plaintiff's termination had been inaccurate, Plaintiff has not pled any facts that show that he was fired for his cooperation with DHEC. The facts alleged in the amended complaint demonstrate that approximately three months after Plaintiff had cooperated with DHEC, and only after Spivey accused him of falsifying records, he was terminated. The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards,* 178 F.3d at 244. "The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). The facts alleged in the amended complaint do not support the legal conclusion that Plaintiff was fired for having cooperated with DHEC. Therefore, the undersigned recommends Plaintiff's third cause of action be dismissed with prejudice.

Plaintiff's claim that his termination violated public policy because it was based on false claims that he violated HIPAA also fail. Plaintiff's argument that Defendants violated public policy by improperly relying on HIPAA is unsupported by any law. The determination of what constitutes public policy is a question of law for the courts to decide. *Barron*, 713 S.E.2d at 638. At best, Plaintiff argues that there should be a public policy exception to the at-will employment doctrine when an employer terminates an

employee for violating HIPAA, if the employer has misinterpreted HIPAA. The undersigned disagrees. Defendants may terminate an at-will employee for having disclosed a patient's information, even if the information was not protected by HIPAA. The court's role is not to determine whether Plaintiff's termination was good or fair, but only whether it was a violation of the law or public policy. The undersigned recommends Plaintiff's fourth cause of action be dismissed with prejudice.

### 3. Defamation

To recover for defamation under South Carolina law, the complaining party must show: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm. *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002). Defendants argue that Plaintiff has provided nothing more than a formulaic recitation of the elements. [ECF No. 27-1 at 14]. In response, Plaintiff argues that he stated with specificity the content of the alleged statements, the speaker, and to whom the statement was published. [ECF No. 30 at 19].

A review of the amended complaint reveals that Plaintiff only claims that "CVS" falsely accused him of falsifying documents, terminated him for these false accusations, and published the false grounds to Plaintiff's coworkers, DHEC, and the public at large. [ECF No. 23 at ¶¶ 62–63]. Plaintiff fails to identify any individual at CVS who made false statements, the content of the false statements, or any specific individual to whom the false statements were allegedly published. Therefore, the undersigned recommends Plaintiff's defamation claim be dismissed with prejudice. *See McNeil v. S.C. Dept. of*

8

*Corrections*, 743 S.E.2d 843, 848 (S.C. Ct. App. 2013) (affirming dismissal of a defamation claim where plaintiff did not specify the alleged false statements or allege to whom they were made).

        4.        Negligence

To recover for negligence in an employment action under South Carolina law, the plaintiff must show that (1) the employer owed a duty to do or not to do any of the things alleged; (2) the employer breached this duty; (3) plaintiff was injured; and (4) the employer's breach proximately caused plaintiff's injuries. *Anthony v. Atlantic Group, Inc.*, 909 F. Supp. 2d 455, 472 (2012). Here, Plaintiff can not show that Defendants owed him a duty, as South Carolina law is clear that an employer does not owe a duty of care in terminating an at-will employee. *Gause v. Doe*, 451 S.E.2d 408, 409 (S.C. Ct. App. 1994). To the extent Plaintiff argues that Defendants may have had an employee handbook or other employment documents mandating that they follow a particular policy or procedure, the duty would sound in contract law rather than negligence. *See Anthony,* 909 F. Supp. 2d at 473 ("A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty arising independently of any contract duties between the parties, however, may support a tort action.") (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995)).

### 5. Intentional Infliction of Emotional Distress

Under South Carolina law, a plaintiff must establish the following elements to recover for the intentional infliction of emotional distress: (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it. *Hansson v. Scalise Builders of South Carolina*, 650 S.E.2d 68, 70 (S.C. 2007). As explained by the South Carolina Supreme Court in *Hannson*, "the court plays a significant gatekeeping role in analyzing a defendant's motion for summary judgment[]" in order to prevent claims for intentional infliction of emotional distress from becoming a panacea for wounded feelings rather than reprehensible conduct[.]" 650 S.E.2d at 72 (internal quotations and citations omitted). The *Hannson* court noted that a plaintiff alleging an emotional distress claim bears a "heightened standard of proof." *Id*.

In the employment context, mere termination or unpleasant conduct by supervisors does not rise to the level of actionable outrage. *See, e.g., Alonso v. McAllister Towing of Charleston, Inc*., 595 F. Supp. 2d 645, 649–50 (D.S.C. 2009) (dismissing as a matter of law plaintiff's claim for intentional infliction of emotional distress because of termination and noting "having one's employment terminated is a stressful experience, but it can hardly be said to be an act so severe that no reasonable person could be expected to endure it.") (internal quotation omitted); *Shipman v. Glenn*, 443 S.E.2d 921, 922–23 (S.C.

10

Ct. App. 1994) (holding a supervisor's actions of verbally abusing and threatening an employee with cerebral palsy with the loss of her job, and ridiculing the employee's speech impediment to the extent the employee was physically ill and had to leave work early was insufficient to state a claim for intentional infliction of emotional distress); *Wright v. Sparrow*, 381 S.E.2d 503, 505–06 (S.C. Ct. App. 1989) (finding allegations that supervisor built a case to justify firing the plaintiff by loading her with responsibility while stripping her of authority and by changing the manner of performing certain duties and then accusing her of not following directions insufficient as a matter of law to constitute the tort of outrage); *Corder v. Champion Rd. Mach. Int'l Co.*, 324 S.E.2d 79, 81 (S.C. 1984) (holding that plaintiffs' allegation that they were fired in retaliation for exercising their legal rights was insufficient as a matter of law to constitute outrage); *but see McSwain v. Shei*, 402 S.E.2d 890, 891–92 (S.C. 1991) (holding that jury could find outrageous and intolerable the conduct of an employer who forced employee to perform exercises in public which exposed her incontinence problem to others); *Turner v. ABC Jalousie Co. of N.C.*, 160 S.E.2d 528, 530 (S.C. 1968) (where plaintiff alleged that she suffered a nervous breakdown after defendant had used vile, profane, and abusive language, held that a cause of action had been stated).

>Plaintiff alleges he suffered severe emotional distress:
>
>(a)  By being questioned in a hostile and accusatory manner by a DHEC official in the presence of a CVS employee who took no steps to ensure the fairness of the proceeding;
>
>(b) By being accused of a violation of laws when CVS knew, or should have known, that no violation existed;

(c) By being terminated in a sudden and hostile manner, with no warning, despite the fact that the a complete investigation was not conducted;

(d) By being treated as if he committed criminal acts when CVS and DHEC knew or should have known that he did not.

[ECF No. 23 at ¶ 77]

Having considered the facts and allegations in the light most favorable to Plaintiff, but performing the role of gatekeeper as to Plaintiff's cause of action for intentional infliction of emotional distress, the court finds Plaintiff has not alleged conduct that rises to the level of outrage under South Carolina law. *See Hannson,* 650 S.E.2d at 72; *see also Johnson v. Dailey*, 437 S.E.2d 613, 615 (S.C. 1995) (noting the court determines, as a matter of law, whether a plaintiff's complained-of conduct was "so extreme and outrageous it exceed[ed] all possible bounds of decency, and [was] regarded as atrocious and utterly intolerable in a civilized society.") (internal citations omitted).

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion to dismiss [ECF No. 27] be granted with leave to file an amended complaint as to his first and second causes of action within 15 days of the district court's order on Defendants' motion to dismiss.[2] If the district judge accepts this recommendation and Plaintiff fails to file an amended complaint within 15 days of the district court's order on the motion to dismiss, the undersigned recommends dismissing this action in its entirety with prejudice.

---

[2] Because Plaintiff had an opportunity to amend the complaint once with regard to his third through seventh causes of action after Defendants' original motion to dismiss [ECF No. 9] was fully briefed, the undersigned recommends Plaintiff's third through seventh causes of actions be dismissed with prejudice.

12

IT IS SO RECOMMENDED.

*[Signature: Shiva V. Hodges]*

December 12, 2014                                   Shiva V. Hodges
Columbia, South Carolina                       United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).