IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| James D. Odom, | ) | C/A No.: 3:14-456-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| CVS Caremark Corporation; CVS Rx Services, Inc.; and South Carolina CVS Pharmacy, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

In this employment discrimination case, James Odom ("Plaintiff") sues his former employer CVS Rx Services, Inc., and its related entities CVS Caremark Corporation and South Carolina CVS Pharmacy, LLC ("Defendants"), based on his termination from employment. Plaintiff filed this action on January 22, 2014, in the Richland County Court of Common Pleas. [ECF No. 1-1]. The case was timely removed on February 21, 2014. [ECF No. 1].

On August 1, 2014, Plaintiff amended his complaint to add claims of sex discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"). [ECF No. 23].

On August 15, 2014, Defendants filed a motion to dismiss Plaintiff's first amended complaint. [ECF No. 27]. On January 30, 2015, the Honorable Mary G. Lewis, United States District Judge, granted the motion to dismiss, but allowed Plaintiff fifteen days to amend his claims of sex and age discrimination, wrongful discharge in violation

of public policy related to the investigation of records, defamation, and intentional infliction of emotional distress. [ECF No. 42]. On February 13, 2015, Plaintiff filed a second amended complaint, including claims for sex and age discrimination, wrongful discharge in violation of public policy, and defamation. [ECF No. 43].

This matter comes before the court on Defendants' partial motion to dismiss the claims in Plaintiff's second amended complaint for wrongful discharge in violation of public policy and defamation. [ECF No. 45]. Plaintiff filed a response to the motion [ECF No. 51], and Defendants filed a reply [ECF No. 52]. The motion having been fully briefed, it is ripe for disposition. Because the motion is dispositive, this report and recommendation is entered for the district judge's consideration. On September 11, 2014, all pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.). For the reasons that follow, the undersigned recommends the district court grant in part and deny in part Defendants' motion to dismiss.

I.    Factual Background

Plaintiff began working for CVS in 1980. [ECF No. 23 at ¶ 10]. Most recently, he worked at the Assembly Street location in Columbia, South Carolina ("the Pharmacy"), where he was the Pharmacist-in-Charge. *Id*. at ¶ 10. The Pharmacy is owned and operated by South Carolina CVS Pharmacy, LLC, but Plaintiff was an employee of CVS Rx Services, Inc., which is the entity that employs the company's pharmacists and pays their salaries. *Id*. at ¶ 11.

In May 2013, Bobby Jack Spivey, Jr. ("Spivey"), an investigator with the South Carolina Department of Health and Environmental Control ("SCDHEC"), visited the Pharmacy to investigate a pharmacy patient ("Patient") accused of having unlawfully submitted a fraudulent prescription for a controlled substance. *Id*. at ¶ 12. Spivey advised Plaintiff that in January 2013, Patient presented a forged prescription and obtained a supply of a controlled substance. *Id*. at ¶ 13. Plaintiff was not working on the day in January 2013 when the prescription was filled. *Id*. at ¶ 14.

Plaintiff states that the standard procedure requires the recipient to sign for receipt of a controlled substance. *Id*. at ¶ 16. Because the electronic signature for Patient's prescription was illegible, Spivey searched the paper-tracking books/logs that document daily sales of controlled substances. *Id*. at ¶ 17. Spivey asked Plaintiff to assist in his review of the paper books/logs. *Id*. at ¶ 18. Plaintiff had difficulty finding Patient's log, so he continued his search over the weekend. *Id*. at ¶¶ 20, 22. During his search, Plaintiff "reached out to a younger female coworker who maintained some form of relationship with a Columbia police officer." *Id*. at ¶ 20. The coworker contacted a Columbia police officer to obtain Patient's driver's license number, but this information did not assist in the search. *Id*. at ¶ 21. After searching for several hours, Plaintiff located the entry and contacted Spivey. *Id*. at ¶ 22. Spivey visited the Pharmacy the following Monday to retrieve the information. *Id*.

Approximately three months later, during the week of August 26, 2013, CVS Loss Prevention Manager Shannon Hammond ("Hammond") visited the Pharmacy to speak with Plaintiff about the investigation. *Id*. at ¶ 23. Plaintiff claims this was the first time he

had been approached about the investigation since May 2013. He stated that he had assisted in finding the entry and turned it over to Spivey. *Id*. Hammond asked if Plaintiff had obtained the information properly and Plaintiff assured Hammond that he had. *Id*. at ¶ 24. Hammond then left the room and returned minutes later, accompanied by Spivey. *Id*. at ¶ 25. Spivey then accused Plaintiff of having falsified documents. *Id*.

Spivey subsequently asked Plaintiff if he would be willing to submit to a lie detector test, which Plaintiff was adamantly willing to take. *Id*. at ¶ 27. Hammond agreed that a lie detector test was an appropriate measure. *Id*. Spivey, Hammond, and Plaintiff scheduled the test for September 10, 2013. *Id*. However, on September 4, 2013, Plaintiff arrived at work and was met by his supervisors, Thomas Phillips and Ann Pruter, who informed him that Hammond had concluded that he had committed a violation of Health Insurance Portability and Accountability Act ("HIPAA"). *Id*. at ¶ 29. Spivey and Hammond had not previously mentioned a HIPAA violation. *Id*. at ¶ 30. That same day, Plaintiff was terminated from his position. *Id*. at ¶¶ 33.

II.     Discussion

   A.     Legal Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Indeed, "[t]he presence of a few conclusory legal

terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). Furthermore, in analyzing a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs. Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

    B.    Analysis

        1.    Wrongful termination in violation of public policy

In his third cause of action, Plaintiff claims that he was terminated in violation of public policy for having cooperated with DHEC. [ECF No. 43 at ¶¶ 50–62]. Although South Carolina recognizes the presumption of at-will employment, the public policy exception to the at-will doctrine provides an employee with a cause of action if his termination violates public policy. *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213, 216 (S.C. 1985). The South Carolina Supreme Court has held that the public policy exception is applicable to "situations where the employer asks the employee to violate the law or the reason for the termination itself is a violation of criminal law," but also applies whenever "there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy." *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637, 638 (S.C. 2011). The determination of what constitutes public policy is a question of law for the courts to decide. *Id*. at 638.

In his response, Plaintiff does not dispute that Defendants did not ask him to violate the law and that his termination was not a violation of criminal law, but notes that

the claim may be expanded under *Barron*. [ECF No. 51 at 7–8]. Plaintiff argues that S.C. Code Ann. § 44-53-10, which provides DHEC with authority to investigate drug sales, and S.C. Code Ann. § 40-43-86(DD), which prohibits pharmacists from "publishing or circulating false, misleading, or otherwise deceptive statements concerning the practice of pharmacy," should be read together to establish that it is the public policy of South Carolina for pharmacists to cooperate with DHEC investigations. *Id*. at 7.

As recently as January 2015, the South Carolina Supreme Court reiterated the "restraint" employed by the courts in "undertaking the amorphous inquiry of what constitutes public policy." *Taghivand v. Rite Aid Corp.*, 768 S.E.2d 385, 387 (S.C. 2015).[1] In declining to expand the public policy exception to at-will employment by recognizing a public policy favoring the reporting of crimes, the *Taghivand* court noted that any exception to the at-will employment doctrine "should emanate from the General Assembly, and from [the Supreme Court of South Carolina] only when the legislature has not spoken." *Id*. at 389. Given the South Carolina Supreme Court's recent guidance on the issue, the undersigned recommends that the court decline to recognize Plaintiff's suggested public policy exception to at-will employment. The undersigned is not persuaded that the General Assembly of South Carolina intended to create such an exception to at-will employment or that the South Carolina Supreme Court would recognize such an exception. Therefore, the undersigned recommends Plaintiff's third cause of action be dismissed with prejudice.

---

[1] The South Carolina Supreme Court addressed the issue in *Taghivand* upon a certified question from United States District Judge Richard M. Gergel.

2.      Defamation

To recover for defamation under South Carolina law, the complaining party must show: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm. *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002). Plaintiff alleges that CVS agents and employees, including Hammond and Thomas Phillips, made statements to CVS employees, DHEC employees, and others that Plaintiff falsified documents and committed a HIPAA violation. [ECF No. 43 at ¶¶ 65–67]. Considered in the light most favorable to Plaintiff, the undersigned finds he has pleaded a claim for defamation sufficient to survive a motion to dismiss. Although Defendants argue the alleged defamatory statements are subject to a qualified privilege, such privilege is not absolute and is an affirmative defense that must be raised in Defendants' answer. *Moore v. New South Exp. Lines*, 192 S.E. 261 262 (S.C. 1937). Therefore, the undersigned recommends Defendants' motion to dismiss be denied as to Plaintiff's defamation claim.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion to dismiss [ECF No. 45] be granted as to Plaintiff's third cause of action for wrongful discharge in violation of public policy and denied as to Plaintiff's fourth cause of action for defamation.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

April 28 2015  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).